IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEREK DAYOUB,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12cv1770 |
| | ) | **Electronic Filing** |
| **JOHN M. AARON**, **STEVEN TOPRANI**, ) | | |
| **GEORGE ROBERTS, WILLIAM** | ) | |
| **NIMAL, WASHINGTON COUNTY** and | ) | |
| **BOROUGH OF BURGETTSTOWN,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

Derek Dayoub, a municipal police officer ("plaintiff"), commenced this civil rights action

against Washington County, Washington County Chief Detective John M. Aaron ("Aaron"),

former Washington County District Attorney Steven Toprani ("Toprani"), Borough of

Burgettstown, Borough of Burgettstown Police Chief George Roberts ("Roberts") and

McDonald Borough Police Officer William Nimal ("Nimal") (collectively "defendants") seeking

redress for assertedly being falsely charged with engaging in criminal conduct while on duty on

two separate occasions. Plaintiff's complaint advances federal claims for malicious prosecution,

malicious abuse of process and conspiracy to interfere with civil rights in violation of the Fourth

and Fourteenth Amendments and state law claims for malicious prosecution and malicious abuse

of process. Presently before the court are defendants' motions to dismiss under Federal Rule of

Civil Procedure 12(b)(6). For the reasons set forth below, the motions will be granted in part and

denied in part.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all

allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view

them in the light most favorable to the non-moving party." <u>Rocks v. City of Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. <u>Id.</u> at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. <u>Id.</u> Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. <u>Id.</u> at 1949-50; <u>see also</u> <u>Twombly</u>, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005) & <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 741 (1975)); <u>accord</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions,

have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

The record as read in the light most favorable to plaintiff establishes the background set forth below. On September 27, 2008, plaintiff was in the process of taking into custody two teenagers who were suspected of breaking into cars. One of the teens was John Dvorsak's ("Dvorsak") son. Plaintiff secured the teenagers and placed them in handcuffs. During this process Dvorsak arrived on the scene and attempted to talk to his son. Plaintiff directed Dvorsak to stay away and considered him to be interfering with his investigation and arrest. Dvorsak defied the order and tried to remove his son from the area. Plaintiff again requested that Dvorsak

stop. Dvorsak did not comply, went into a fighting stance and proceeded to attack plaintiff. Plaintiff defended himself with pepper spray.

Midway Police Chief Joe Yoest ("Yoest") arrived on the scene as the attack was occurring. He was able to subdue Dvorsak and take him into custody. Yoest filed a police report that confirmed that Dvorsak attacked plaintiff and that plaintiff had not used excessive force in defending himself.

Nimal, a friend of Dvorsak, arrived on the scene after Dvorsak was taken into custody. Notwithstanding that Nimal was not present during the altercation, he completed a police report that portrayed plaintiff as the aggressor who then used excessive force by spraying Dvorsak with an entire can of pepper spray.

On October 11, 2008, plaintiff and two officers entered a McDonald's restaurant. They began joking with an employee, Brandon Lancaster ("Lancaster"), with whom they were familiar and had previously socialized. After joking around, plaintiff patted Lancaster on the back. As Lancaster was walking away he slipped and fell on the wet floor. Lancaster did not believe that anything inappropriate or criminal had taken place and did not attempt to press charges or contact the police. All of these events were captured on video.

Prior to September 27 and October 11 of 2008, plaintiff had met Aaron at a 2007 Christmas party at Bob Price's house. Aaron, who is Jewish, immediately began showing hostility towards plaintiff, who is of Middle Eastern descent. Despite the fact that plaintiff is considered to be a Christian and not a Muslim, Aaron called him a "terrorist" and made derogatory remarks about plaintiff's ancestry and presumed Muslim beliefs. This hostility continued after the Christmas party and escalated when plaintiff was hired as a police officer by Smith Township in 2007 and Center Township in 2008. On numerous occasions Aaron and Toprani entered Smith Township Police Department and took plaintiff's case files. Several times

4

Aaron, without explanation, dropped charges after plaintiff had developed a strong case against the suspect.

In November of 2008, Aaron subjected plaintiff to a polygraph and drug test. Aaron did not ask plaintiff if he wanted an attorney and refused to permit anyone to be present besides himself and plaintiff. Aaron gave no explanation for his behavior and told plaintiff that he was "on the path to getting arrested and being sued civilly."

On January 14, 2009, plaintiff was arrested by Aaron and Toprani for simple assault, official oppression and harassment based on the October 11, 2008 incident. Aaron and Roberts pressured Lancaster to change his story and when he refused, they threatened him until he agreed to say that plaintiff had assaulted him. Thereafter, Lancaster contacted plaintiff and explained that Aaron and Roberts forced him to change his story. Lancaster also provided a statement of plaintiff's innocence to Smith Township Chief of Police, Winford Bernie Larue ("Larue"), who recorded the statement.

Upon his arrest, plaintiff was placed in a holding cell from about 4 p.m. to 12 a.m. During this time he was questioned by Aaron and Toprani about Washington County Chief Deputy Joe Murray ("Murray"). While Aaron had been a police officer he and Murray had both sought the chief deputy position in the Washington County Sheriff's Department. After a heated contest Murray was appointed chief deputy and Aaron eventually became the chief detective for the Office of the District Attorney.[1] During plaintiff's interrogation Aaron attempted to elicit information about the alleged gambling habits of Murray. Aaron also forced plaintiff to be photographed and fingerprinted without judicial authorization.

---

[1] Toprani was the Washington County District Attorney when plaintiff was arrested, interrogated and prosecuted.

A few days before plaintiff's January 14, 2009, arrest, Roberts told Amber Price and Larue that (1) Roberts and Aaron were bragging about how they had been able to get Mike North (another officer) arrested and (2) plaintiff and Amber Price were next. Just before Aaron and Roberts forced Lancaster to change his story, plaintiff found a surveillance camera in one of the air vents of the Burgettstown Borough police department. The camera was facing the bathroom that some of the female officers and staff members used to change clothes. Plaintiff and Amber Price called the Pennsylvania Attorney General's office and the Washington County District Attorney's office and reported the camera. Aaron told Amber and Bob Price that he installed the camera as a favor to Roberts. Thereafter, Aaron began to warn Bob Price that plaintiff's time was coming and that he should make sure his daughter, Amber Price, stayed away from plaintiff.

On February 5, 2009, Aaron arrested plaintiff for a second time and charged him with assault and official oppression based on the September 27, 2008, incident. Aaron offered Dvorsak a deal in which all of the charges against him would be dropped if Dvorsak would accuse plaintiff of assaulting him. Dvorsak agreed and all charges against him were dropped. Dvorsak had previously told a local magisterial district judge that he had attacked plaintiff and that plaintiff did not assault him.

Nimal, who is friends with Dvorsak and was fired from the Smith Township Police Department (the department that employed plaintiff), produced a police report and later gave testimony that was influential in initiating the charges. Nimal reported and claimed that plaintiff assaulted Dvorsak and used an entire can of pepper spray to restrain him. Nimal opined that these acts were excessive and improper. Nimal's report conflicted with the police report of Yoest. Aaron contacted Yoest and threatened him in an effort to persuade Yoest to change his police report. Yoest refused and contacted the FBI.

Plaintiff was terminated from his police officer position at Smith and Center Townships in April of 2009. On April 21, 2009, plaintiff's two criminal cases were waived for trial. Before his preliminary hearings Aaron and Toprani again pressed plaintiff for information regarding Murray's alleged gambling habits. Lancaster, plaintiff and other witnesses informed Toprani of the false information upon which the charges against plaintiff were based. Thereafter, Toprani continued to pursue the cases against plaintiff.

On October 7, 2009, Toprani moved for a nolle prosequi in both cases. On December 10, 2009, Judge DiSalle refused to grant it. The motion was renewed multiple times but Judge DiSalle continued to deny it. Finally, in April of 2011 Judge Disalle agreed to grant the motion provided plaintiff pay $1,600 in restitution to the "crime victims fund." Judge DiSalle insisted on this payment despite Toprani's agreement to drop the charges without any conditions. Thereafter, Toprani refused to recommend that the record of plaintiff's arrest be expunged.

Defendants move to dismiss plaintiff's complaint on a number of grounds. They assert that the §1983 claim for malicious prosecution cannot stand because the underlying prosecutions were not terminated in plaintiff's favor. They also argue that the statute of limitations bars the §1983 claim for malicious abuse of process. Defendants Nimal, Roberts, Aaron and Toprani ("the individual defendants") assert that plaintiff's state law claims for malicious prosecution and malicious abuse of process fail for these same reasons.

The individual defendants further assert that the §1985 claim for conspiracy fails because the complaint does not identify a sufficient factual basis to support an inference that racial or class-based discriminatory animus motivated any of their purported actions. Defendants Nimal, Aaron and Toprani maintain that the §1985 claim also is barred by the statute of limitations.

Defendants Washington County and the Borough of Burgettstown ("the municipal defendants") assert that the complaint does not identify a sufficient basis to establish that a

municipal policy or custom was the moving force or cause of the prosecutions and therefore the §1983 claims for malicious prosecution and malicious abuse of process have not been stated against them. Additionally, defendant Roberts posits that both the §1983 and state law claim for malicious prosecution against him lack merit because he did not initiate criminal charges against plaintiff. Defendant Nimal argues that he is entitled to absolute immunity because the claims against him are based on witness testimony and he is entitled to qualified immunity in any event. He also asserts that punitive damages cannot be recovered because his alleged conduct cannot reach the purported "outrageous" threshold needed for such relief.

Plaintiff maintains that both a §1983 claim and a state law claim for malicious prosecution have been stated because Toprani dropped the charges without any conditions and thus the underlying prosecutions terminated in his favor. Neither his §1983 claim nor his state law claim for malicious abuse of process are untimely because the prosecutions were not terminated until April of 2011 and before this time he had no reason to know that defendants were abusing the legal process. The complaint alleges a §1985 conspiracy with sufficient particularity and Aaron's animosity toward plaintiff's familial descent provides a factual predicate to support an inference of invidious discrimination. Similarly, the conspiracy claim is not untimely because like the §1983 claim for malicious prosecution, the conspiracy claim did not accrue until the prosecutions were terminated. In other words, because the §1985 claims are intertwined with and dependent upon the underlying §1983 violation, they accrued at the same time and were asserted in a timely manner. The complaint contains adequate factual premises to support the existence of an unlawful municipal policy or custom because Aaron, Toprani and Roberts had the ability to and did establish official policy for Washington County and the Borough of Burgettstown. Nimal is not entitled to absolute immunity based on witness testimony or qualified immunity because he did not testify at a trial, but instead made a false

report of the events and gave it to Aaron. Finally, plaintiff contends that the request for punitive damages against Nimal should not be stricken because his acts were intentional or reckless and were brought about by an evil motive.

In general, §1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under §1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997); Berg v. City of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." ) (citing Groman, 47 F.3d at 633).

Defendants' assertion that plaintiff cannot proceed with his claims for malicious prosecution is misplaced. In order to prove a state law claim for malicious prosecution a plaintiff must show that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Merkle v. Upper Dublin School District, 211 F.3d 782, 792 (3d Cir. 2000) (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir.1996)). To bring such a claim within the scope of §1983, the plaintiff must identify a constitutionally protected right that was violated by the defendant. Merkle, 211 F.3d at 792; Albright v. Oliver, 510 U.S. 266, 273 (1994). Here, plaintiff has advanced a Fourth Amendment malicious prosecution claim. Accordingly, he must be able to show that he "suffered deprivation of liberty consistent with the concept of seizure as a

consequence of a legal proceeding." McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir.2003)).

Defendants' attempt to gain relief pursuant to the favorable termination element is unavailing. The purpose of this element is to "avoid the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Krossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009) (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)). Thus, in order to satisfy this element, the plaintiff must show that the criminal proceedings "have been disposed of in a way that indicates [his or her] innocence." Id. This may be accomplished in a number of ways, including a showing of "the formal abandonment of the proceedings by a public prosecutor." Id. (citing Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002)).

Here, plaintiff relies on the nolle prosequi motion to establish a disposition that indicates his innocence. While a nolle prosequi motion may be sufficient to satisfy the favorable termination element, not all cases resolved by the filing of such a motion are deemed to have been terminated in the plaintiff's favor. DiFronzo v. Chiovero, 406 Fed. Appx. 605, 608 (3d Cir. 2011) (citing Hilfirty, 91 F.3d at 579-80); Donahue, 280 F.3d 371 (holding that proceedings did not terminate in the plaintiff's favor where the prosecutor dropped the charges in the interest of judicial efficiency). Thus, a grant of nolle prosequi does not by itself indicate a defendant's innocence. DiFronzo, 406 Fed. Appx. at 609. To the contrary, the circumstances giving rise to the final disposition must be capable of sufficiently supporting a finding of actual innocence before it can be said that the charges have terminated in the plaintiff's favor. Id.

Plaintiff has pled sufficient factual matter to satisfy the favorable termination element. Plaintiff alleges that Lancaster told Toprani that plaintiff did not assault him and that Aaron and

Roberts had pressured Lancaster into changing his story. There was video of the Lancaster incident that showed plaintiff had not done anything improper. In addition, Dvorsak had told a magisterial district judge that plaintiff had not assaulted him and Yoest had filed a police report to the same effect. Taking these facts as true, it is reasonable to infer that Toprani moved to dismiss the proceedings based on the lack of evidence.

Defendants' argument that the $1,600 in "restitution" required by Judge DiSalle is fatal to the favorable termination element is wide of the mark. Defendants rely on Hilfirty, Donahue and DiFronzo. These cases are distinguishable. In Hilfrity, the nolle prosequi motion was made pursuant to a plea bargain. Hilfrity, 91 F.3d at 576. The court held that "unlike a situation where the prosecution seeks a grant of nolle prosequi because of insufficient evidence, dismissal of charges as a result of a compromise is not an indication that the accused is actually innocent of the crimes charged." Id. at 580 (citing Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993)). In Donahue, the nolle prosequi motion was made because the prosecutor did not believe the plaintiff would receive additional jail time if convicted on retrial. Donahue, 280 F.3d at 384. The court reasoned that the disposition evidenced prosecutorial discretion on how best to utilize government resources and thus was not indicative of the plaintiff's innocence. Id. Finally, in DiFronzo, at summary judgment, the district court and the Third Circuit concluded that the order of nolle prosequi was not indicative of the plaintiff's innocence because neither the order nor any matter in the record explained why the motion had been filed or granted. DiFronzo 406 Fed. Appx. at 609. Thus, there was a lack of information about the plaintiff's proclaimed innocence and the plaintiff had failed to meet his burden of production. Id.

In the present case, plaintiff has pled sufficient facts to raise an inference that the nolle prosequi motion was filed and granted in a manner that demonstrates his innocence. Unlike Hilfrity, the filing of the nolle prosequi motion was a unilateral action undertaken by the

prosecutor. There was no agreement or compromise between plaintiff and Toprani. Unlike DiFronzo, plaintiff has pled facts that raise a reasonable inference that the prosecutions were terminated due to a lack of evidence.[2] And unlike Donahue, these circumstances fail to provide a basis to assume that the guilt of plaintiff was left open and the charges were dropped because their success would have produced minimal gains.

It is true that the motion was granted only after plaintiff agreed to pay $1,600 to a crime victims fund. But this requirement was not added by the prosecutor. Instead, Judge DiSalle insisted upon the payment; neither Toprani nor anyone from his office required such a payment. In Haefner, the Pennsylvania Supreme Court found that the proceedings were terminated in the plaintiff's favor when the prosecution dropped the charges because of insufficient evidence. Haefner, 626 A.2d at 521. Here, the branch of the Commonwealth that retains discretion on whether to proceed with criminal prosecutions decided to abandon plaintiff's cases without any conditions. This state of affairs will support a finding of favorable termination notwithstanding the trial judge's insistence that money had to be paid into a general victim's fund before the motion would be granted.

In short, plaintiff's guilt was not left open by the circumstances underlying the filing of the nolle prosequi motion. The actions of Judge DiSalle do not preclude a finding of favorable termination as a matter of law. At this juncture plaintiff's factual allegations must be taken as true and as such they supply an adequate basis to move his malicious prosecution claims from possible to plausible.

---

[2] Of course, the dropping of the charges due to a lack of evidence necessarily implies a lack of guilt.

Roberts' assertion that plaintiff's malicious prosecution claims fail because he did not initiate the proceedings against plaintiff is unconvincing. "It is not necessary that [a] defendant initiate the proceedings himself. Liability for malicious prosecution can attach when [a] defendant influences a third party to initiate the proceedings." Bristow v. Clevenger, 80 F. Supp.2d 421, 432 (M.D. Pa. 2000) (citing Gilbert v. Feld, 788 F. Supp. 854, 861 (E.D. Pa. 1992)). "Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may . . . be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." Henderson v. City of Philadelphia, 853 F. Supp.2d 514, 518 (E.D. Pa. 2012) (citing Brockington v. City of Philadelphia, 354 F. Supp.2d 563, 569 (E.D. Pa. 2005)).

Plaintiff alleges that Roberts helped Aaron fabricate evidence by forcing Lancaster to change his story. In other words, Roberts intentionally helped procure false information that the prosecutor's office used against plaintiff. Given the relevant case law and the factual matter pled in plaintiff's complaint, Roberts can be said to have initiated the criminal proceedings.

In contrast, plaintiff's federal and state law claims for malicious abuse of process are barred by the applicable statute of limitations. "The gravamen of an abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure." Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. 1998); Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 304 (3d Cir. 2003) (malicious abuse of process is founded on the "improper use of process after it has been issued, that is, a perversion of it.") (citing McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987)); see also Jennings v. Shuman, 567 F.2d 1213, 1217-18 (3d Cir. 1977) (same). In order to prevail on such a claim, a plaintiff must be able to prove "some definite act or threat not authorized by the

process, or aimed at an objective not legitimate in the use of the process . . .; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." <u>Shiner</u>, 706 A.2d at 1236 (quoting <u>Di Sante v. Russ Financial Co.</u>, 380 A.2d 439, 441 (Pa. Super. 1977)); <u>Hart v. O'Malley</u>, 647 A.2d 542, 552 (Pa. Super. 1994) (collecting cases in support); <u>Napier v. City of New Castle</u>, 407 Fed. Appx. 578, 582 (3d Cir. 2010) (same) (citing <u>Rosen v. Am. Bank of Rolla</u>, 627 A.2d 190, 192 (Pa. Super. 1993)); <u>Jennings v. Shuman</u>, 567 F.2d 1213, 1217 (3d Cir. 1977) (same).

Defendants challenge plaintiff's malicious abuse of process claim as untimely. Under the Federal Rules of Civil Procedure, a statute of limitations defense must be raised in the answer because Rule 12(b)(6) does not authorize the defense to be raised by motion. <u>Robinson v. Johnson</u>, 313 F.3d 128, 134–35 (3d Cir. 2002), <u>cert.</u> <u>denied</u>, 540 U.S. 826 (2003). Nevertheless, "the law of this circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." <u>Id.</u> at 135. "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." <u>Id.</u>

"Actions brought under 42 U.S.C. §1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued." <u>Larsen v. State Employees' Ret. Sys.</u>, 553 F. Supp.2d 403, 415 (M.D. Pa. 2008) (quoting <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 126 (3d Cir. 2006)). Pennsylvania law provides a two-year statute of limitations. 42 Pa. C. S. § 5524.

The accrual date of a §1983 claim is governed by federal common-law tort principles. <u>Larsen</u>, 553 F. Supp.2d at 416. Under this approach "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."

14

Id. (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).  Therefore, the "cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Id. (quoting Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)).  For claims involving malicious abuse of process, the accrual date typically is the date of the plaintiff's arrest because at that time he or she knows or should know of the injury.  Rose v. Bartle, 871 F.2d 331, 350-51 (3d Cir. 1989).

Plaintiff argues that his cause of action did not accrue at the time of his arrest because he could not have known that defendants improperly were using any legal process against him.  But this assertion sufficiently is undermined by the facts set forth in plaintiff's complaint.  Plaintiff alleges that prior to his arrest on January 14, 2009, Lancaster told him that Aaron and Roberts had pressured Lancaster into changing his story.  Similarly, prior to his arrest on January 14, 2009, Amber Price allegedly told plaintiff that Roberts had been bragging about how he and Aaron were able to get another officer arrested and that plaintiff was next.  These facts would give a reasonable person reason to known that defendants were abusing the legal process when they arrested plaintiff.

But even assuming that plaintiff was unaware of defendants' alleged improper use of process upon his arrest, he clearly had reason to known of defendants' perversion of the legal process thereafter.  Plaintiff was held for eight hours following his January 14, 2009 arrest.  During this time Aaron and Toprani interrogated plaintiff in an attempt to obtain damaging information about Murray.  Aaron and Toprani again pressed plaintiff for similar information before his preliminary hearing.  Plaintiff also was aware of Yoest's report backing plaintiff's account of the Dvorsak incident.  At this juncture plaintiff had been informed of (1) defendants' motives by Lancaster and Amber Price and (2) Aaron's attempt to have Yoest change his police report.  Plaintiff also knew that Aaron and Toprani where attempting to illicit information that

15

was unrelated to the incidents leading to his arrest.  Given these circumstances a reasonable person would have known of the abuse of process that defendants allegedly were committing.

Furthermore, Toprani dropped all charges against plaintiff on April 21, 2009.  At this point any abuse of process necessarily would have occurred.  Plaintiff has not identified any facts about the defendant's use of process that only became known after this date.  Thus, the statute of limitations had run on April 21, 2011, at the latest.  Because plaintiff did not file suit until December 5, 2012, his claim for malicious abuse of process is barred.

Plaintiff likewise has failed to allege a conspiracy within the scope of §1985.  Section 1985 provides a cause of action for conspiracies with the objective of: 1) preventing by force, intimidation or threat any person from accepting or holding office or performing the duties thereof, 2) deterring by force, intimidation or threat any party or witness from giving testimony in any court of the United States and 3) depriving any person or class of persons of the equal protection of the laws.  42 U.S.C. §1985(1)-(3).  Plaintiff has not pled any facts that would implicate subsections one or two.  Thus, the issue is whether plaintiff's case fits within §1985(3).

In order to state a claim under §1985(3), a plaintiff must allege "1) a conspiracy, 2) motivated by a racial and class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws, 3) an act in furtherance of the conspiracy and 4) an injury to the person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).  This right to redress is not intended to provide a federal remedy "for all tortious, conspirator interferences with the rights of others" or to be a "general [font of] federal tort law." Faber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (citing Griffin v. Breckenridge, 403 U.S. 88, 101-102 (1971)).  To the contrary, this section can be invoked only where the conspiracy has as its purpose the deprivation of the equal protection of the laws or privileges and

16

immunities under the law, and this deprivation is motivated by racial or class-based animus. <u>Griffin</u>, 403 U.S. at 102; <u>United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott</u>, 463 U.S. 825, 829 (1983).

Defendants argue that the complaint has not alleged facts to establish the racial or class-based discriminatory animus that is required under §1985(3). More succinctly, defendants claim that plaintiff has failed to plead facts that demonstrate that the motivations behind the conspiracy were racial or class-based in nature. In his response, plaintiff simply concludes that his complaint pleads sufficient facts for a §1985(3) violation and points to various numbered paragraphs therein to support this conclusion.

The facts in plaintiff's complaint do not give rise to a reasonable inference that any concerted action was motivated by invidious discriminatory animus. Under the well pleaded facts it is plausible that defendants were working together. It is not plausible, however, that defendants' actions or agreements were motivated by the race or class-based animus. Plaintiff has pled that Aaron held personal class-based prejudices against him. But there is no factual basis from which to infer that any of the defendants knew of this prejudice, shared this prejudice or had the goal of conspiring against plaintiff due to this prejudice. Because the allegations of the complaint do not give rise to a reasonable inference that the concerted actions were motivated by a racial or class-based invidious discriminatory intent, plaintiff's §1985(3) conspiracy claim cannot stand.

The municipal defendants' attempt to obtain dismissal at this juncture is unavailing. Whether a municipal government may be held liable under §1983 is governed by the doctrine announced in <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 694 (1978). There, the Supreme Court held that liability against such an entity may not be established by the respondeat superior doctrine, but instead must be founded upon evidence

indicating the government itself supported a violation of the plaintiff's constitutional rights.  Id.;

see also Bielevicz v. Dubinon, 915 F.3d 845, 849-50 (3d Cir. 1990) ( "municipal liability

attaches only when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

the injury.") (quoting Monell, 436 U.S. at 694); see also Connick v. Thompson, 131 S. Ct. 1350

(2001) ("official municipal policy includes decisions of a government's lawmakers, the acts of

its policymaking officials, and practices so persistent and widespread as to practically have the

force of law.").

     Plaintiff seeks to hold the municipal defendants liable based on the individual conduct of

Aaron, Toprani and Roberts.  Although a municipality cannot be liable on a theory of respondent

superior, it can be held liable where an employee's conduct implements an official policy or

practice and that policy or practice causes the violation of a constitutional right.  Hill v. Borough

of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006).

     An individual can be said to implement official policy or practice when "1) the individual

acted pursuant to a formal government policy or [custom] . . . 2) the individual himself has

policy-making authority such that his conduct represents official policy or 3) a final policy-

maker renders the individual's conduct official for liability purposes."  Id.   To assess whether an

individual is capable of establishing final policy a court must determine 1) whether, as a matter

of state law, the individual in question has authority to make policy in the area at issue and 2)

whether that authority is final and unreviewable.  Id.

     Plaintiff's complaint identifies Aaron as Chief Detective of Washington County, Toprani

as the District Attorney of Washington County and Roberts as Chief of Police of the Borough of

Burgettstown.  Each of these individuals possessed various aspects of final decision-making

authority in conjunction with 1) the office held and 2) the underlying events and/or decisions

leading to the charges being filed against plaintiff. Reasonable minds can differ as to whether such facts make a claim for municipal liability plausible. Plaintiff will be given the benefit of the doubt at this juncture and final determinations as to these claims will be made after the record is further developed.

Nimal's attempt to invoke qualified immunity at this stage of the case is wide of the mark. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Rogers v. Powell, 120 F.3d 446, 454 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "A defendant has the burden to establish that he is entitled to qualified immunity." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two part test to determine whether a defendant is entitled to qualified immunity. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated, "the qualified immunity inquiry is at an end; the officer is entitled to immunity." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). If, however, the facts read in the light most favorable to the plaintiff show a violation of a constitutional right, the analysis proceeds to the second step: "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. A right is clearly established in the particular context if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. However, if it was not clear "to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Kopec, 361 F.3d at 776.

Although immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir.1994); see also 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 358–59 (1990) (citing cases). Accordingly, absolute or qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (quoting Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir.1996) (citation omitted)); accord Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir.1998) (recognizing entitlement to official immunity on face of complaint); Santamorena v. Georgia Military College, 147 F.3d 1337, 1342 (11th Cir.1998) (recognizing entitlement to qualified immunity on face of complaint).

Plaintiff alleges enough factual matter to raise the inference that Nimal knowingly gave false information to Aaron and Toprani that contributed to the charges being filed.[3]  Under such a scenario Nimal would have initiated charges against plaintiff without probable cause, causing plaintiff to be arrested and seized in violation of the Fourth Amendment.  The right to be free from arrest and prosecution based only on false charges was well established.  See e.g. Brockington, 345 F. Supp.2d at 568-69 ("Although 'prosecution without probable cause is not, in

---

[3] Plaintiff alleges that Nimal gave false "testimony" in his complaint but emphasizes in his brief that the claims against Nimal are predicated on the setting forth of false information in his police report.  To the extent the claims are predicated on any actual testimony Nimal gave to the grand jury, Nimal is entitled to immunity under Briscoe v. LaHue, 460 U.S. 325 (1983) and its progeny.  In contrast, immunity does not attach when false information is supplied by a police report.  See Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992) (investigative evidence gathering and the discretionary decision to pursue charges are not entitled to absolute immunity but instead are assessed by the "objective reasonableness" standard governing qualified immunity).  Accordingly, the allegations of "testimony" in the complaint have been construed to mean the information Nimal placed in his report and any out-of-court discussions he may have had about that information.

and of itself, a constitutional tort,' it can be a constitutional tort if plaintiff can demonstrate a 'deprivation of liberty consistent with the concept of 'seizure.''") (quoting <u>Gallo v. Philadelphia</u>, 161 F.3d 217, 222 (3d Cir.1998) (following <u>Albright</u>, 510 U.S. at 274)).  Nimal has failed to advance any evidence to meet his burden of showing that a reasonable officer would not have known that this right was being violated in the specific context confronting him.  Consequently, Nimal has failed to prove entitlement to qualified immunity pursuant to the existing record.

Nimal's assertion that the complaint does not allege conduct that could qualify for punitive damages likewise is misplaced.  "The standards for imposing punitive damages under Section 1983 and under Pennsylvania law are similar, but do not completely overlap."  <u>Nykiel v. Borough of Sharpsburg</u>, 778 F. Supp.2d 573, 590 (W.D. Pa. 2011).  Federal law allows a jury to impose punitive damages "for conduct which demonstrates a reckless or callous disregard of, or indifference to, the rights or safety of others."  <u>Savarese v. Agriss</u>, 883 F.2d 1194, 1203 (3d Cir. 1989) (citing <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983)).  In contrast, Pennsylvania law allows a jury to award punitive damages for "conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  <u>Feld v. Merriam</u>, 506 Pa. 383, 395 (1984).  While federal law calls for "something more than a bare violation" of the plaintiff's federal rights, state law goes further and requires "'extreme' or 'especially egregious' injurious conduct" for the imposition of punitive damages.  <u>Nykiel</u>, 778 F. Supp.2d at 590 (quoting <u>Brennan v. Norton</u>, 350 F.3d 399, 428-29 (3d Cir. 2003) and <u>Martin v. Johns-Manville Corp.</u>, 508 Pa. 154, 169-70 (1985) (respectively)).

Nimal argues that the only "untrue" account he possibly could have given would pertain to the amount of pepper spray plaintiff used to restrain Dvorsak and that such conduct cannot be outrageous.  However, plaintiff pled that Nimal reported that plaintiff assaulted Dvorsak and then used excessive force even though Nimal had no firsthand knowledge of the incident.

Plaintiff further alleges that Nimal thereafter gave a conflicting account of the event. It is plausible that Nimal's actual conduct will support a finding of outrageousness. Similarly, the facts and reasonable inferences therefrom make it plausible that plaintiff's Fourth Amendment rights were violated intentionally or recklessly. Accordingly, it would be premature to dismiss plaintiff's request for punitive damages.

In conclusion, the defendant's motion to dismiss will be granted as to the §1983 claim for malicious abuse of process at Count II and the §1985 claim for conspiracy at Count IV. The state law claim for malicious abuse of process at Count III also will be dismissed. The motions will be denied as to the malicious prosecution claims at Counts I and III. The malicious prosecution claims against Nimal at Counts I and III will be dismissed to the extent they are predicated on any actual testimony Nimal gave in a judicial proceeding or before a judicial body and denied to the extent they are predicated on providing false information in his police report.

Date: September 9, 2013

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Gianni Floro, Esquire
       Patricia A. Monahan, Esquire
       Paul D. Krepps, Esquire
       Michaelene E. Weimer, Esquire
       Philip J. Sbrolla, Esquire

       (*Via CM/ECF Electronic Mail*)